502

Alice M. Carter, Appellee, v. Southern Limited, Inc., et al. Appeal of Southern Limited, Inc., Appellant.

Gen. No. 40,867.

Heard in the third division of this court for the first district at the October term, 1939. Opinion filed February 14, 1940.

BURT A. CROWE and CARL H. PREIHS, both of Chicago, for appellant.

PRESCOTT, BURROUGHS & TAYLOR, of Chicago, for appellee; ANDREW J. O'DONNELL, PATRICK B. PRESCOTT, JR. and A. M. BURROUGHS, all of Chicago, of counsel.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment entered in the superior court on the verdict of a jury for $2,300 against the defendant Southern Limited, Inc., for damages alleged to have been suffered by plaintiff Alice M. Carter, as the result of malicious prosecution and false imprisonment, caused by the defendant through its agents, said plaintiff having been accused of having received stolen property, to wit, Southern Limited, Incorporated bus tickets of the value of $104.

It appears from the evidence that the defendant Southern Limited, Incorporated, is the owner and possessor of a certain bus line; that it had in its employ a man by the name of Allen who was its agent and sold tickets at the 47th street station; that plaintiff purchased some tickets from Allen; that at the time plaintiff was employed at the Union Bus Depot at 316½ East 47th street; that the said Allen failed to turn in the money to his employer and subsequently pleaded guilty to keeping the money which he had received from plaintiff for the tickets which amounted to $104; that the defendant also demanded that plaintiff pay the $104 for the tickets for which she had already paid.

It further appears from the evidence that Arnold, a representative of that defendant company, obtained the assistance of the police department and upon plaintiff's refusal to pay the money, Arnold said: "Throw her in jail"; that Keena, another employee said, "I am the Southern Limited. Throw her in jail." And the evidence further shows that plaintiff was put in jail.

It further appears from the evidence that after plaintiff had been in jail for two days or more, Van-

dermeer, the representative of the defendant, filed a sworn complaint in the municipal court of Chicago; that thereafter he went to the State's Attorney's office in response to an order from Fitzgerald who authorized him to sign the complaint against plaintiff, which he signed; that Fitzgerald was vice president of the defendant company.

It further appears from the evidence that on December 12, 1936, the complaint against plaintiff was dismissed by the State's Attorney and thereafter the defendant, by its agents, took the matter before the grand jury and had plaintiff indicted for conspiracy, on which charge plaintiff was discharged on motion of the State's Attorney.

It further appears from the evidence that both before and after her arrest plaintiff was at times employed by defendant at its 47th street bus station; that she succeeded Allen and was intrusted with the sale of tickets and defendant's money.

In the statement of facts it is uncontroverted that prior to December 10, 1936, tickets used for transportation upon the Southern Limited lines were in the usual course of its business being returned to that company of which they had no record of the sale and for which they did not receive the price of the transportation. It does not appear in the record just how or by what means the vehicle department of the police department of this city learned of these circumstances. However, they did know of it, and acting upon the orders of Police Lieutenant Killackey, Officers Callahan and Filetti, were assigned to investigate this leakage and failure of the payment to the company for tickets sold, and upon learning that the tickets were sold by the plaintiff Alice Carter, the police officers called at the office run by Mr. and Mrs. Carter and requested Mr. Carter to go to the vehicle department at 11th and State streets for questioning and a determination of the facts surrounding the failure of pay-

ment for tickets sold. Plaintiff volunteered to go in place of Mr. Carter, stating that she had made the sale. The ticket had been sold to a Mr. Townsend, who, prior to that time, had been taken from defendant's bus on the south side of Chicago by police officers Callahan and Filetti.

After the police officers had taken Mrs. Carter to the 11th street police station, they apparently tried to get her to tell a story other than she had previously told. It is quite evident that the police department was being used for collecting a private debt and these police officers seemed to be willing tools to accomplish that result. They had no warrants and they had no right to obtain them. No crime had been committed to their knowledge and as apparent exponents of the third-degree method, they deprived this woman of her liberty at the instigation of defendant in disregard of the rights of the plaintiff.

Again referring to defendant's statement of facts, we find that Lieutenant Killackey ordered that Mrs. Carter be kept in jail and then sought the advice of the State's Attorney of Cook county. One attempt was made to see the latter, without success, and the following day after a trip to the criminal court building, Mrs. Carter was taken to the State's Attorney's office in the criminal court building on the west side of Chicago for further examination. The Assistant State's Attorney, Irwin Clorfene, testified that he was acting in the capacity of Assistant State's Attorney on December 12, 1936, the date Mrs. Carter was brought into his office. He, as Assistant State's Attorney, had been requested to make inquiry as to the alleged claim of some fault on the part of Alice Carter in connection with receiving stolen property. He was assigned by his superior officer to take a statement from Mrs. Carter and to make an investigation. He testified that it was part of his job to recommend or otherwise prosecute any complaints in matters of that nature. The

case involved bus tickets and, all matters of that nature, were referred to Mr. Clorfene. During this time plaintiff was kept in jail without a warrant. Vandermeer was sent for by the police department and at the request of the officers then went to the criminal court building. There, at that time and place, the circumstances and facts surrounding the loss of money in connection with bus tickets sold and unaccounted for were related to Mr. Clorfene by Officers Filetti and Callahan, and Vandermeer and Townsend. The following statement is copied 'verbatim from defendant's brief: "The plaintiff, Mrs. Carter, was there, told of her constitutional rights and instead of cooperating with the State's Attorney and making a full disclosure of the facts and circumstances, she refused to talk. She was told by the State's Attorney that it would be wise for her to give him the entire story and if she had a defense to the story she should disclose it. She evaded the State's Attorney and thereby quite naturally aroused suspicion in the mind of Mr. Clorfene." This is the first defense of third-degree methods being substituted for the "Bill of Rights" that has come to our notice. Article II, section 10 of our Constitution, entitled, Bill of Rights, reads as follows: "No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."

We wonder if some public officials really believe that they have the right, in violation of the Constitution and law, to subject citizens to the treatment received by plaintiff herein. Do they not know that they have no right to arrest a person without a warrant unless they either see a crime committed or know that a crime has been committed and have reason to believe the accused is the guilty party? Do they not know that their duty is to take the person so arrested before a magistrate; that they have no right to make a defendant "talk"; that the so-called "investigation" cannot

be held pursuant to the law in making the defendant a witness against himself or herself; that the presumption of innocence is still one of the cherished rights of citizenship; that the condition or state of any official's mind, whether suspicious or otherwise, would not justify acts which would unlawfully deprive such citizen of his or her liberty or to compel such person to "talk" against his or her will?

The defense in this case seems to be based upon the theory that this procedure was taken on the advice of counsel, and that Mr. Clorfene, an Assistant State's Attorney was the counsel. In order that the defense—on advice of counsel—may be interposed, it must be shown that the defendant made a full and fair statement of all the facts and then it should state just what facts he communicated. It is not permissible that he testify that he disclosed all the facts and circumstances without stating what they were. 38 Corpus Juris 489. It further appears, however, that it was the police officers and not defendant who stated the so-called facts to the Assistant State's Attorney. In addition to this, however, it appears that the defense of "advice of counsel" was not interposed in the trial court and neither the pleadings nor the evidence contain any reference to said defense, and for that reason it cannot now be interposed here for the first time.

The evidence shows that when plaintiff purchased the tickets from defendant's agent, she paid for them and was under no obligation or duty to account to anyone.

Complaint is made by defendant to the answers of the jury to two interrogatories of defendant requiring answers from the jury. These interrogatories were improperly given, they were confusing and contradictory, leaving the jury to determine questions of law and not of fact, but no harm was done by the jury in answering them as they did.

There are many assignments of error presented for our consideration, the principal ones being that the verdict is against the weight of the evidence. The other assignments are mainly modifications and reiterations of the same.

We think the jury should have returned a verdict against the defendant as the preponderance of the evidence is in favor of plaintiff. Citizens, corporations and those who are charged with the enforcement of the law should know there are certain limitations placed upon their powers and that they must proceed according to the law; that the rights and liberties of individuals cannot be unlawfully taken from them, and the defendant should have known that charging an innocent person with a crime which she did not commit, causing such person to be arrested and tried and then later causing such person to be indicted and not prosecuted, as was done in the instant case, with all the consequent embarrassment and expense, and all this without probable cause or any evidence to sustain such action, creates a liability. The law makes provision as to what the redress shall be and we think the evidence and the proof amply sustain the case of the plaintiff against the defendant. We think the trial court did right in entering a judgment in favor of plaintiff and against the defendant.

For the reasons herein given the judgment of the superior court is affirmed.

*Judgment affirmed.*

HEBEL and BURKE, JJ., concur.